**HARRY L. SHEINMAN & SONS, Inc., v. SCRANTON LIFE INS. CO.**

**No. 488 Civ. A.**

District Court, M. D. Pennsylvania.

June 19, 1941.

---

Thomas D. Caldwell, of Harrisburg, Pa., for plaintiff.

William J. Fitzgerald, of Scranton, Pa., for defendant.

JOHNSON, District Judge.

This is an action in assumpsit brought by the plaintiff, Harry L. Sheinman and Sons, Inc., against the Scranton Life Insurance Company to recover the sum of $5,000 with interest on account of the accidental death of Albert Sheinman on November 30, 1939, in the Borough of Manhattan in New York.

The case was tried before the court and a jury and a verdict rendered for the plaintiff for $5,000 with interest. At the trial, the court reserved a point on defendant's motion for binding instructions, and defendant now asks the court to set aside the verdict and enter judgment for the defendant, contending that there is not sufficient evidence to sustain the verdict.

Plaintiff's decedent, the insured, met his death before a subway train in New York City on November 30, 1939. It is admitted that death was caused by external and violent means, and the sole question is whether death resulted from solely accidental means. At the trial defendant attempted to show suicide or bodily disease was at least partly responsible for the death. Upon the present motion, defendant argues only that plaintiff's own witnesses showed that bodily disease was a cause of death. This is based upon the testimony of Amedeo Giorno, an eyewitness, who said the decedent was sitting on a bench, humped down. He stated further: "He was resting his head at the time. To me he appeared to be sick. And I glanced at him once, and maybe I let maybe a half minute or so pass before I noticed him again. And with that he got up, and you could see that he was unsteady, as though he was sick or something, you know; he didn't walk as though he was, that he was healthy; there appeared to be something wrong. And with that, there was a train coming in, and he continued over to there, and he was at the edge of the level, as though he would want to throw up, vomit, he was leaning over there, and with that he toppled, sort of slumped over the platform down to the tracks". Trial Record, pages 14, 15.

The particular provision in the policy upon which this suit is based states that "Upon receipt of due proof that the death of the insured occurred while the policy was in full force and effect, by accidental drowning, or in consequence of bodily injury effected solely through external, violent and accidental means, of which injury there is a visible contusion or wound on the exterior of the body, except in case of internal injury if proven by an autopsy to have been fatal; and upon further proof that such death occurred within seventy days after such injury was sustained, and as a direct result thereof, independently and exclusively of all other causes, the Scranton Life Insurance Company will pay an additional amount equal to the amount stated and described in the face of said policy as the amount insured subject to the further conditions and limitations as follows". The amount insured here was $5,000.

The "further conditions and limitations" provide:

"1. The Accidental Death Benefit provided for in this rider shall not be claimed or paid if the death of the insured results directly or indirectly, in whole or in part,

from bodily or mental disease; or from automobile racing; or from coal mining operations underground; or from self-destruction, whether sane or insane." There is some other language to that limitation which is not applicable here: Trial Record, page 44.

The sole issue in the case was "whether the deceased, Albert Sheinman, came to his death solely through external, violent and accidental means, of which injury there was a physical contusion or wound on the exterior of the body, not from other causes; that the only cause of his death was external, violent and accidental". Trial Record, page 45.

On this issue the court charged the jury:

"If he came to his death solely through external, violent and accidental means, you find that from all the evidence, then the plaintiff here would be entitled to recover * * * otherwise the verdict should be for the defendant.

"If you find from all the evidence that there was any other cause for his death or any other contributing cause of his death, then there could be no verdict for the plaintiff. If you find that the evidence is so conflicting that the plaintiff has not established death by accidental means solely, then you would render a verdict for the defendant; but if you are satisfied from the weight of the evidence, from the fair preponderance of the evidence, that the decedent's, Albert Sheinman's, death occurred solely by violent, accidental and external means, then the plaintiff would be entitled to recover here.

" * * * if his falling or the contact there with the street car, the subway car, was not purely accidental, but happened because of some other means other than pure accident, then you would have to render a verdict in favor of the defendant.

"If, for example, he purposely jumped in front of a moving car, there could be no recovery. That would be suicidal and not solely accidental. Or if it occurred from any other means than solely and externally accidental, you find that from the evidence, you would render a verdict for the defendant.

"Remember always that the plaintiff has the burden of showing and establishing that it was solely and purely external and accidental, and that burden has to be met by the fair weight or preponderance of the evidence. As I have already said, the plaintiff has every burden of establishing that." Trial Record, pages 45, 46, 47.

No exceptions were taken to the charge. Trial Record, page 50. It must therefore be assumed that the parties were entirely satisfied that it was complete and correct in every detail.

Defendant contends that if it is accepted that the decedent at the time of his death was suffering from indisposition or upset stomach, and for that reason moved toward the subway track in order to vomit, such indisposition or temporary stomach trouble constituted bodily disease within the terms of the policy, and consequently plaintiff has failed to meet its burden of proving a purely accidental death.

■ "Disease" as used in the policy was not intended to cover and does not apply to a temporary derangement of the functions of some organ. Instead, this term implies a substantial attack of illness, or a malady, which had some bearing on the general health of the insured. Connecticut Life Insurance Co. v. Union Trust Co., 112 U.S. 250, 257, 5 S.Ct. 119, 28 L.Ed. 708; Preferred Accident Ins. Co. v. Muir, 3 Cir., 126 F. 926, 929, 930. In this case, the jury could conclude fairly from the evidence that there was a temporary derangement of an organ only.

■ On the question of death caused by accidental means, "it surely cannot be successfully contended that nothing will answer [the] requirement [of affirmative proof of accident] save direct proof of the precise means by which the fall was brought about. If that were the rule, no accident could ever be inferentially established, and no accident resulting in immediate death or loss of consciousness could ever become a ground of recovery under a policy like this, unless it happened in the presence of witnesses, and in such manner as to impress upon them its exact details. On the contrary, it must be true that the accidental character of a fall may be proved by circumstances, just as any other fact may be so proven; the test of the sufficiency of the circumstances adduced always being that, viewed as a whole, they reasonably exclude, by their preponderating probative weight, any other explanation founded in the evidence. * * * Nor can it be indispensable that they establish a specific one of a number of accidental causes equally reasonably suggested by the evidence. It must be enough if they fairly exclude design or disease as a cause inferable con-

sistently with the evidence, and thus justify the conclusion that the occurrence is to be referred to the general head of accident. In this sense, where the process of elimination applied under the evidence removes the inference of design or disease, and yet the proofs do not single out any particular one of a variety of fortuitous occurrences capable of accounting for the result consistently with the evidence—i. e., where it is satisfactorily shown that there must have been an accident, but, as among a number of reasonably supposable species of accident, it is unknown which occurred—it is certainly accurate to say * * * that a case of death or injury proceeding from an unknown cause is a case of accidental death or injury." Taylor v. General Acc. Assur. Corp., 208 Pa. 439, 441, 442, 57 A. 830, 831.

In the Taylor case the court named as specific kinds of accidents, tripping, slipping, misstep or sudden turn causing decedent to lose his balance: 208 Pa. at page 440, 57 A. 830.

In the present case the jury had heard evidence that decedent appearing ill, had walked toward the subway track, had leaned over, as one witness said, apparently to vomit, then fell before the train and died as a result of injuries sustained at that time. Plaintiff's eyewitness flatly stated that the decedent "didn't jump off the platform". Trial Record, page 15. The witness stated that decedent fell before the train; why he fell the witness could not tell. The jury could properly find that decedent's ill health concerned a temporary condition only, not amounting to bodily disease.

Deceased's position and actions might reasonably have resulted from exhaustion, indisposition, or a losing of balance under the evidence, whereby the exposure of his body to the on-coming subway train would have been unintentional and involuntary, and the means which produced the injury thus became accidental. Under the testimony in this case, the jury could reasonably infer from the facts and circumstances that the death of deceased resulted from accidental means. Dixon v. Metropolitan Life Ins. Co., 136 Pa.Super. 573, 591, 7 A.2d 549; Arnstein v. Metropolitan Life Ins. Co., 329 Pa. 158, 159, 162, 196 A. 491; Pomorskie v. Prudential Ins. Co. of America, 318 Pa. 185, 177 A. 783; Wainstein v. Equitable Life Assurance Society, 318 Pa. 428, 178 A. 502.

Since the jury could reasonably and properly find that the death of plaintiff's decedent resulted solely through external, violent and accidental means, the motion to set aside the verdict and enter judgment for defendant must be denied.

Now, therefore, it is ordered that defendant's motion to set aside the verdict and enter judgment for the defendant is denied.